UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN ELLISON,

               Plaintiff,              Case No. 2:16-cv-11332
                                      District Judge Matthew Leitman
v.                                 Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

## RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14)

I.      **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 17), **DENY** Plaintiff's motion for summary judgment (DE 14), and

**AFFIRM** the Commissioner's decision.

II.     **REPORT**

      Plaintiff, Carolyn Ellison, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for social security disability insurance

benefits ("DIB").  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

14), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 17), and the administrative record (DE 11).

## A.    Background

In June 2013, Plaintiff applied for DIB, alleging she has been disabled since July 1, 2008.  (R. at 116-122.)  Plaintiff later amended her disability onset date to June 4, 2013.  (R. at 50-51.)  In a disability report completed on her behalf by counsel in June 2013, Plaintiff listed things like depression, diabetes and "[p]ain and [n]europathy [f]eet" as some of the conditions which prevent her from working.  (R. at 136.)

Plaintiff's application was denied (R. at 72-81) and she sought a *de novo* hearing before an administrative law judge ("ALJ").  (R. at 82-83.)  ALJ Timothy Christensen held a hearing on January 16, 2015.  (R. at 30-51.)  On February 23, 2015, ALJ Christensen issued an opinion which found Plaintiff to not be disabled. (R. at 11-25.)   The Appeals Council denied Plaintiff's request for review on February 10, 2016.  (R. at 1-3.)  ALJ Christensen's decision thus became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

### B.    Plaintiff's Medical History[1]

In May 2013, Plaintiff met with physician's assistant Nafisa Latif at the
Rochester Endocrinology & Diabetes Center.  (R. at 290-292.)  Notes of that visit
reflect that Plaintiff was using oral medication for her diabetes, the control of
which had "improved[.]"  (R. at 290.)  Plaintiff had no joint pain, muscle cramps or
muscle weakness.  (R. at 291.)  On a monofilament sensory exam, Plaintiff was
able to feel all twenty-four tested locations.  (R. at 292.)  Plaintiff's strength was
listed as 5/5 and she had a normal gait and posture.  (R. at 292.)

Licensed psychologist Dawn Bane Gventer, Psy.D., conducted a
consultative psychological examination of Plaintiff in September 2013.  (R. at 333-
336.)  Dr. Gventer noted that Plaintiff had never been in therapy but had "been on
med [presumably medication] management for two years."  (R. at 333.)  Plaintiff
reported going swimming, bowling, taking walks and "doing everything around the
house . . . ."  (R. at 334.)  Dr. Gventer described Plaintiff as being "motivated and
open" with fluent speech.  (R. at 334-335.)  Plaintiff was able to recall six numbers
forward and four in reverse, recalled three of three words after a five minute delay
and recalled all the recent Presidents of the United States.  (R. at 335.)  Dr. Gventer
diagnosed Plaintiff with adjustment disorder with depressed mood and noted
Plaintiff had only mild psychosocial stressors.  (R. at 336.)  Dr. Gventer's

---

[1] The brief in support of Plaintiff's motion for summary judgment contains only a
lone, two-sentence paragraph regarding her medical history.  (DE 14 at 4.)

prognosis for Plaintiff was "good[,]" noting there is "no mood lability that would prevent her from ongoing work success." (*Id.*)

In March 2014, Smita Bijlani, M.D., performed a consultative exam of Plaintiff. (R. at 344-346.) Dr. Bijlani noted that Plaintiff's diabetes was "well controlled" and "improving[.]" (R. at 344.) Plaintiff was cooperative and appropriately oriented. (R. at 346.) Plaintiff's gait, station and posture were all normal. (*Id.*). Dr. Bijlani again examined Plaintiff in October 2014. (R. at 347-352.) Again, Dr. Bijlani noted that Plaintiff's diabetes was "improving" and "well controlled[.]" (R. at 347.) Plaintiff was overweight but was "not making any attempts to lose weight." (R. at 350.) Plaintiff, as before, was cooperative and appropriately oriented. (*Id.*) On a sensory monofilament exam, Plaintiff's sensation was intact at twenty-three tested spots but she was unable to feel the filament on her right big toe. (R. at 351.) However, Plaintiff's strength was 5/5 and her posture, station and gait were all normal. (*Id.*)

Plaintiff had a podiatric exam with Dr. Kris Hasse in January 2014.[2] (R. at 384-385.) Plaintiff had normal skin color, temperature and texture. (R. at 384.) Her muscle strength and gait were normal and her risk of falling was minimal. (R.

---

[2] The Commissioner lists the exam as having occurred in January 2015. (DE 17 at 5.) The notes of the exam are difficult to discern with complete precision. Regardless, the date of the exam does not impact the outcome of this action.

at 385.)  Plaintiff did have mild bilateral edema, diabetes mellitus and neuropathy.
(R. at 384-385.)

### C.    Hearing Testimony

#### 1.  Plaintiff's Testimony

At the January 16, 2015 hearing, Plaintiff testified that she was almost fifty-
six years old and had a twelfth grade education.  (R. at 34.)  Plaintiff formerly
worked as a unitizer for General Motors, which involved constant repetitive
movements of items weighing about ten pounds.  (*Id.*)  Plaintiff retired on a regular
pension, not a disability pension, in July 2008.  (R. at 35.)  After retirement,
Plaintiff worked as, among other things, a janitor, but stopped working due to a
burning sensation in her feet.  (R. at 36.)  Plaintiff agrees that she has weight
issues,[3] a visual disorder, adjustment disorder with depressed mood and
hyperlipidemia.[4]  (*Id.*)  She also uses a C-PAP machine and an inhaler.  (R. at 37.)

Plaintiff used to swim for fun and exercise but stopped a couple of years
ago.  (R. at 37.)  Plaintiff also no longer goes bowling, instead she "just pretty
much stay[s] at home."  (R. at 37-38.)  She does not walk for exercise but tries to
ride a stationary bike.  (R. at 38.)

---

[3] Though she was not asked her height or weight at the hearing, in May 2013 she
was listed as being five feet, six inches and weighing 238 pounds.  (R. at 291.)

[4] Hyperlipidemia is "the presence of excess fat or lipids in the blood[.]"
https://www.merriam-webster.com/dictionary/hyperlipidemia#medicalDictionary
(last visited February 14, 2017).

Plaintiff's attorney then asked her to explain why she could no longer work, and Plaintiff stated that she is "tired most of the time," has breathing problems, worsening diabetes, feels depressed and has trouble sleeping. (R. at 39.) Plaintiff takes insulin for her diabetes, which "kind of slows [her] down a little bit . . . ." (R. at 39-40.) Plaintiff has neuropathy in her feet, which cause them to feel numb. (R. at 40.) Plaintiff's prior jobs required her to stand most of the workday, so she can no longer perform her past work. (*Id.*) She is frequently tired but an unnamed medicine causes her to not be able to sleep well. (R. at 40-41.)

Plaintiff does not perform as many household chores as before; instead her granddaughter and daughter help her do things like wash dishes and vacuum. (R. at 41.) She shops for groceries, with assistance. (R. at 42.) She also drives a car. (*Id.*) Plaintiff is able to take care of her own needs, but attends church less frequently because she is supposed to be an usher but cannot stand long due to problems with her feet. (R. at 43.) Plaintiff can stand a little under an hour before her feet begin burning (*id.*), and can lift comfortably about five to six pounds. (R. at 44.)

### 2. Vocational Expert's Testimony

Vocational Expert ("VE") Harry Sinoea classified Plaintiff's prior work as a production worker as light and unskilled. (R. at 47.) The ALJ then asked the VE whether a person with Plaintiff's age, education and work experience who "is

6

limited to light work; could perform postural activities occasionally . . . ; should avoid concentrated exposure to temperature extremes, vibrations and respiratory irritants" could perform Plaintiff's prior relevant work. (*Id*.)  The VE said "[c]ould perform past work, Your Honor." (*Id.*)  When asked what other work such an individual could perform, the VE listed hand packager (12,500 positions in Southeastern Michigan and 250,000 nationally) and small products assembler (also 12,500 positions in Southeastern Michigan and 250,000 nationally). (*Id.*)  When later asked by Plaintiff's counsel, the VE classified those jobs as being light. (R. at 49.)

> The ALJ then asked the VE to assume:
>
> a hypothetical individual the same age, education and work background as the claimant; due to multiple physical and mental impairments and associated symptoms, including pain, shortness of breath, fatigue, neuropathy, problems with concentration and focus— even if this person were able to go to simple, unskilled work those symptoms would cause this individual to be off task 20 percent or more of any given day.  Could that individual do the claimant's past work, or for that matter any competitive work?

(R. at 48.)  The VE responded such a person could not perform competitive, full-time employment. (*Id.*)  Shortly thereafter, when asked by Plaintiff's counsel, the VE agreed that a person who could not stand six hours out of an eight-hour workday could not perform Plaintiff's past work. (R. at 49.)

### D.  The Administrative Decision

In his February 23, 2015 decision, the ALJ first concluded that Plaintiff met the insured status requirements through March 31, 2015.  (R. at 16.)  At **Step 1** of the sequential evaluation process,[5] the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 4, 2013, the amended alleged onset date. (*Id.*)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: "diabetes mellitus, obesity; hyperlipidemia, breathing disorder, and adjustment disorder with depressed mood . . . ."  (*Id.*)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically

---

[5] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 17.)

Prior to undertaking Step 4, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[6] and determined that she could perform light work,[7] with some exertional limitations, but the work had to be simple and unskilled.  (R. at 19.)  At **Step 4**, the ALJ concluded that Plaintiff could perform her past relevant work as a production worker.  (R. at 24.)   Thus, the ALJ concluded that Plaintiff was not disabled and did not engage in a Step 5 analysis.  (*Id.*)

### E.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

---

[6] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

[7] "Light work" is defined in relevant part as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category [a] when it requires a good deal of walking or standing, or [b] when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §404.1567(b).

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)). In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant."). 

Furthermore, the claimant "has the ultimate burden to establish an entitlement to

benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d

1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

10

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6ᵗʰ Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

As presented in remarkably terse brief in support of her motion for summary judgment (which is slightly over three substantive pages long), the sole issue presented by Plaintiff is "[w]hether this case should be remanded under 42 U.S.C. Sec. 405(g) for the taking of additional testimony of a vocational expert in response to an adequate hypothetical question incorporating Plaintiff's burning feet, peripheral neuropathy, and emotional impairments?"  (DE 14 at 5) (emphasis omitted).[8]  As a prefatory note, Plaintiff's motion for summary judgment is fatally

---

[8] Plaintiff's motion lists the issue presented on the third substantive page of her brief, immediately after her presentation of the facts and immediately before her discussion of the standards of review.  (DE 14 at 5.)  Thus, the motion does not

conclusory, as is highlighted by the fact that the "argument" section of his motion is only three paragraphs long, and a significant portion thereof consists of a block quotation of a federal administrative regulation. (DE 14 at 5-6.) Indeed, other than the quotation of the regulation and a brief discussion thereof, the *only* substantive argument is the following generic paragraph:

> In the present case the Administrative Law [Judge] failed to properly consider Plaintiff's physical impairments, and failed to consider the combined effect of her peripheral neuropathy and the effect of Plaintiff's burning feet on her ability to perform her past relevant work which required her to stand throughout her normal work shift. Under these circumstances the decision of the Administrative Law Judge must be reversed and this case must be remanded under sentence four of 42 U.S.C. Sec. 405(g) for further consideration.

(R. at 5-6.) Notably, that fleeting argument contains <u>no</u> discussion of/citation to the record or a single case which supports Plaintiff's position.[9] Indeed, Plaintiff's submission gives new meaning to the word "brief."

As this Court recently held regarding a similarly underdeveloped motion for summary judgment, Plaintiff's "almost complete lack of argument development renders the majority of his arguments waived. '[I]ssues adverted to in a perfunctory

---

comply with LR 7.1(d)(2), which provides in relevant part that "[a] brief supporting a motion or response must, *at the beginning*, contain a concise statement of the issues presented *and, on the following page, the controlling or most appropriate authority for the relief sought*." (emphasis added). The motion also does not comply with Section B of my Practice Guidelines for Social Security cases. Counsel is cautioned to comply fully with all applicable Local Rules, as well as the Practice Guidelines of the presiding judicial officers, in future cases.

[9] Plaintiff also did not file a reply brief.

manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *Spiteri v. Colvin*, 2015 WL 7258749, at *3 (E.D. Mich. Nov. 9, 2015) (Stafford, M.J.) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) (footnote, citation and internal quotation marks omitted), *report and recommendation adopted at* 2015 WL 8538036 (E.D. Mich. Dec. 11, 2015) (Michelson, J.). The administrative record in this case is over 400 pages long, and the Court will not search through it with a fine-toothed comb to help Plaintiff properly develop her arguments. *See, e.g., Davis v. Comm'r of Soc. Sec.*, 2016 WL 4445774, at *10 (E.D. Mich. July 29, 2016) (Patti, M.J.) ("Having already concluded that the treating physician's . . . opinions were properly discounted, the Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency with the 379-page record, particularly where Plaintiff has failed to use the adversarial process to point out any inconsistencies."), *report and recommendation adopted at* 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.). The Court properly could summarily deny Plaintiff's motion based solely on its insufficiencies. Leniently, however, I will briefly examine the issue presented on the merits.

The core of Plaintiff's argument, as the Court construes it, is that the ALJ's RFC determination is improper because it does not incorporate Plaintiff's subjective complaints and, in turn, the ALJ's questions to the VE were necessarily flawed.  Plaintiff cites to scant, at best, objective medical evidence to support her subjective physical complaints, and cites to no objective evidence to support her allegations of mental health complaints, notwithstanding her contention that "emotional impairment" should have been included in the ALJ's hypothetical.[10]

Plaintiff, as the party seeking benefits, "bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits." *Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. App'x 113, 115 (6th Cir. 2003).  Specifically pertaining to evaluation of a claimant's RFC, it was Plaintiff's burden, not the Commissioner's, to provide evidence showing a more restrictive RFC than that found by the ALJ.  *See, e.g., Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("If a claimant does not secure an official 'Residual Functional Capacity' assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC assessment at step five.").  Nonetheless,

---

[10] Plaintiff's omission is perhaps explained by the inescapable fact that Dr. Gventer's report indicated Plaintiff had only mild psychosocial stressors, a good prognosis overall and did not suffer from mental impairments which would prevent her from successfully working.  (R. at 336.)

Plaintiff's argument does not cite <u>any specific, objective evidence</u> in the record

supporting a more restrictive RFC than that assessed by the ALJ.

On the other hand, the ALJ's RFC determination is supported by substantial

evidence.  There are no treating providers; however,  the ALJ's RFC is in

alignment with the opinions of reviewing physician Russell Holmes, M.D., whose

conclusions the ALJ gave great weight.  (R. at 61-62.)  Plaintiff does not challenge

this assignment of weight.  Dr. Holmes found that Plaintiff had the following

exertional limitations:  occasional lifting/carrying of twenty pounds and frequent

lifting/carrying of up to ten pounds; stand/walk and/or sit about six hours out of an

eight-hour workday; and, unlimited pushing and pulling.  (R. at 61.)  Dr. Holmes

found Plaintiff to have the following postural limitations:  frequent climbing of

ramps and stairs, balancing, stooping, kneeling, and crouching; occasional

climbing of ropes/ladders/scaffolds.  (R. at 61-62.)  He found Plaintiff to have no

limitations with regard to crawling.  (R. at 62.)  Dr. Holmes found Plaintiff had no

visual, manipulative or communication limitations, but that she should avoid

concentrated exposure to extreme cold and heat, as well as vibrations or fumes.

(R. at 62.)

The ALJ similarly found that Plaintiff could perform light work but could

only occasionally climb ladders/ropes/scaffolds; but could frequently climb

ramps/stairs, balance, stoop, kneel crouch and crawl.  (R. at 19.)  He also found she

15

should avoid concentrated exposure to heat/cold/vibrations/respiratory irritants. (*Id.*)  In other words, the ALJ tracked Dr. Holmes' conclusions, with the exception that the ALJ found that Plaintiff could only frequently crawl—which is *more restrictive* than Dr. Holmes' conclusion that Plaintiff could crawl without any restrictions.  In the absence of a report by a treating source, the opinions of the reviewing physicians are the "best evidence" regarding a Plaintiff's functional capacity and, consequently, a decision based upon those conclusions is supported by substantial evidence.  *See, e.g., Watts v. Comm'r of Soc. Sec.*, 179 Fed. App'x 290, 294 (6th Cir. 2006) ("As for her ability to work, none of Watts's treating doctors during the relevant period . . . made detailed functional capacity analyses, which leaves the functional capacity forms from the medical reviewers as the best evidence.").  Because the ALJ's RFC is based upon Dr. Holmes's conclusions, the RFC is perforce supported by substantial evidence.

Moreover, the ALJ's RFC determination is supported by Plaintiff's significant activities of daily living.  As the ALJ noted, Plaintiff's function report indicates she cooks complete meals, cleans her bathrooms, vacuums, mops, shops for food, drives a car, has dinner with friends, takes her granddaughter to the bus stop, attends her games and attends church about twice per month.  (R. at 22, 153-156.)  The ALJ was permitted to take Plaintiff's activities of daily living into account when determining her RFC.  *See, e.g., Moran v. Comm'r of Soc. Sec.*,

16

2010 WL 3325609, at *8 (E.D. Mich. July 20, 2010) (Randon, M.J.) ("Moreover, Plaintiff's own account of his daily activities supports the ALJ's RFC finding. As the ALJ noted, Plaintiff reported in late 2006 that he cleaned his house for two-and-a-half hours each day, which included sweeping, vacuuming, mopping, making the bed, and washing dishes.  Plaintiff further disclosed that he prepared all three of his meals daily and shopped for groceries every other week. Plaintiff attended church twice weekly.  Additionally, as the ALJ noted, despite Plaintiff's complaints and conditions, Plaintiff managed to take walks approximately three times weekly. The ALJ properly considered these activities in arriving at Plaintiff's RFC.") (citations to the record omitted), *report and recommendation adopted at* 2010 WL 3325605 (E.D. Mich. Aug. 23, 2010) (Steeh, J.).  Plaintiff's activities of daily living are consistent with the ALJ's RFC determination, but are inconsistent with someone suffering from a panoply of allegedly disabling conditions.

A subjective recitation of symptomology, standing alone, is insufficient to entitle a claimant to benefits. *See, e.g.,* S.S.R. 96-4p, 1996 WL 374187, at *1 (July 2, 1996) ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.").  In other words, the ALJ simply is not required to accept a claimant's subjective complaints.  *See, e.g.,*

17

*Biermaker v. Comm'r of Soc. Sec.*, 2016 WL 7985329, at *8 (E.D. Mich. June 13, 2016 (Davis, M.J.) ("The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record."), *report and recommendation adopted at* 2016 WL 5027593 (E.D. Mich. Sept. 20, 2016) (Borman, J.).  Indeed, the credibility of the Plaintiff is an area reserved to the ALJ, provided that the ALJ's determination is supported by substantial evidence. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court . . . may not review a determination of credibility. It is for the Secretary and his examiner, as the factfinders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") (quotation marks, citation and alteration omitted). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ was well aware of Plaintiff's testimony and subjective complaints, such as a burning sensation in her feet.  For example, the ALJ noted in his decision that Plaintiff "testified that she no longer takes walks or bowls" but she "uses a stationary bike."  (R. at 22.)  The ALJ also remarked, *inter alia*, that Plaintiff testified that "the diabetes has worsened since she retired."  (*Id.*)  As the ALJ noted, however, Plaintiff's testimony is not in alignment with much of the

18

objective medical record, and accordingly found her credibility to be lacking  (R. at 20ff.)

Among other things, the ALJ observed that Plaintiff's testimony of worsening diabetes contrasts with Dr. Bijlani's October 2014 notation that Plaintiff's diabetes control had improved.  (R. at 22, 350.)  The ALJ also relied upon the fact that the record shows Plaintiff had a normal gait and station.  (R. at 22, 351.)  As the Commissioner notes and as previously cited herein, there are *numerous* references in the record to Plaintiff having a normal gait, station, and strength, and/or an absence of sensory deficits in her extremities. (*See, e.g.*, R. at 287, 292, 346, 351, 385).  Indeed, <u>the only medical evidence</u> which could be construed to support Plaintiff's claims is a one-time finding by Dr. Bijlani that Plaintiff could not feel the monofilament *in only one of the twenty-four tested locations*.  Arguably, the ALJ could, in theory, have relied upon that test to support Plaintiff's subjective complaints.  However, the ALJ chose to rely upon portions of the record which indicated that Plaintiff's diabetes was improving and her gait and strength were normal.  The ALJ was permitted—indeed, required—to choose which of the somewhat conflicting evidence to give credence to and which to discount.  Plaintiff asks the Court to second guess the ALJ's choice in this area.  However, that is not a matter within the Court's province.  *See, e.g., Her*, 203 F.3d at 389-390 ("Even if the evidence could also support another conclusion, the

19

decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

Having determined that the ALJ's RFC determination is supported by substantial evidence, it follows that the hypothetical questions the ALJ asked the VE were also permissible since they were premised upon that RFC. *See, e.g., Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477-478 (6th Cir. 2003) ("In sum, it was entirely proper for the ALJ to present the vocational expert with the hypothetical he constructed, which did not reflect Ms. Jones's complaints, including the constant crying spells, since the hypothetical was supported by substantial evidence in the record."). In short, Plaintiff is incorrect to the extent she argues that the ALJ erred by not factoring in additional limitations in his questions to the VE.

### G.   CONCLUSION

From a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits to Plaintiff. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 17), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.* If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: February 22, 2017                s/Anthony P. Patti
                                         Anthony P. Patti
                                         UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record
on February 22, 2017, electronically and/or by U.S. Mail.

                                         s/Michael Williams
                                         Case Manager for the
                                         Honorable Anthony P. Patti